# EXHIBIT A

FILED: 9/22/2023 5:25 PM
Vermont Superior Court
Lamoille Unit
23-CV-04013

## STATE OF VERMONT

SUPERIOR COURT                                                    CIVIL DIVISION
LAMOILLE UNIT                                                     DOCKET No.:_____

---

MOLLY LEWIS, As Executrix of the Estate of    )
SCOTT LEWIS, and Parent and Legal Guardian )
Of Z.L., T.L., and A.L.,                      )
        Plaintiffs,                          )
                                              )
        v.                                   )
                                              )
VR US HOLDINGS II, LLC d/b/a Stowe            )
  Mountain Resort,                           )
TERRA-NOVA, LLC,                              )
ZIP INSTALL, LLC,                             )
PETZL AMERICA, INC., and                      )
JB TECHNOLOGIES LLC d/b/a Precisioneering, )
        Defendants.                          )
                                              )

---

## COMPLAINT

### JURY TRIAL DEMANDED

### Introduction

1.       In September 2021, fifty-three year old Scott Nichols Lewis was living the life of someone who had thoughtfully left Manhattan behind for the joy of raising his family in the mountains around Stowe. He was a father to three young boys, who were the center and proudest achievement of his life. Scott's love of the outdoors and the physical was contagious, and he took great satisfaction in teaching skiing in the winter, sailing in the summer and respecting the mountains outside his door. He was equally comfortable with and skilled at skippering sailboats, piloting helicopters and leading hiking expeditions. He was employed by Defendant VR US Holdings II, LLC d/b/a Stowe Mountain Resort ("Vail") as a guide on Stowe Mountain Resort's ZipTour® zip line course; a job he had held for seven years. This job allowed

1

him to turn his love of the outdoors and adventure into a living. He was beloved by his family, friends, and colleagues. And he is now deceased because the defendants created, and fostered, a recipe for disaster: a zip line course that was unsafely steep; a zip line trolley (the mechanical device that moves along the zip line cable and connects to the rider's harness) that failed to slow Scott's speed either because of catastrophic failure or because it was not engineered to handle the speeds achieved by riders on that course but sold to Stowe Mountain Resort anyway with knowledge it would be used on that course; a defectively-designed and/or manufactured harness/lanyard assembly that catastrophically ripped at high speed, catapulting Scott at high speed into the cable bollard base several yards away; and an employer that encouraged its employees to engage in high speed zip line runs to promote itself to adventure-seekers, all while deliberately failing to properly inspect and maintain the equipment it supplied to its employees for use on the zipline to save money, knowing full-well that its deliberate workplace safety failures created a workplace hazard, as VOSHA put it, "likely to cause death or serious physical harm to employees."

**Parties**

2.      Plaintiff Molly Lewis is an individual with an address of 760 Webster Road, Hyde Park, Vermont 05655. She is the Executrix of the Estate of Scott Lewis ("Mr. Lewis"), and the parent and legal guardian of her and Mr. Lewis's three minor children, Z.L., T.L., and A.L.

3.      Defendant VR US Holdings II, LLC d/b/a Stowe Mountain Resort ("Vail") is a Delaware limited liability company with a principal office address of 390 Interlocken Crescent, Suite 1000 in Broomfield, Colorado 80021. Vail is registered to do business in Vermont. It owns Stowe Mountain Resort which includes its centerpiece ZipTour® zip line course.

2

4.      Defendant Terra-Nova LLC of Utah ("Terra-Nova") is a Utah limited liability company with a principal office address of 35 West 2100 in South Wanship, Utah 84017. It designed, engineered, selected and/or built all the components for the ZipTour® zip line course at Stowe Mountain Resort.

5.      Defendant Zip Install, LLC ("Zip Install") is a Utah limited liability company and a subsidiary or sister company of Terra-Nova LLC, with a principal office address of 35 West 2100 in South Wanship, Utah 84017. Zip Install is a full service zip line installation company and installed the ZipTour® zip line course at Stowe Mountain Resort.

6.      Petzl America, Inc. ("Petzl") is a Utah corporation with a principal office address of 2929 Decker Lake Drive in Salt Lake City, Utah 84119.  Petzl designed, manufactured, and sold several of the components used on the ZipTour® zip line course at Stowe Mountain Resort.

7.      JB Technologies, LLC ("Precisioneering") is a Nevada limited liability company doing business as Precisioneering, with a principal office address of 10580 N. McCarran Blvd., Suite 115-519 in Reno, Nevada 89503.  Precisioneering is the engineering company hired by Vail to conduct safety inspections of the ZipTour® zip line course at Stowe Mountain Resort in the time period leading up to Scott Lewis' tragic and avoidable death.

8.      Venue is proper in Lamoille County because the Plaintiff resides in this county and the accident resulting in the death of Scott Louis occurred in this County.

**Facts**

9.      In 2014/2015, the Stowe Mountain Resort contracted with Terra-Nova to install one of the longest and fastest zip line rides in North America – i.e. the ZipTour® zip line course.

10.     Terra-Nova was also hired to inspect and maintain the ZipTour® zip line course at

3

Stowe including all constituent equipment and components.

11.      Terra-Nova advertises on its website that what sets its ZipTour® zipline apart from the competition is the "patented ZipTour® trolley, a dynamically controllable device that allows the customer to control their speed of descent and ride experience.  We are the only zip line company in the world that offers this technology!!!  This allows us to build incredibly long zip line spans that can descend from the mountain summit to the base area in just 2 to 4 spans.  Several of our ZipTour® spans are almost one mile long!...the ZipTour® is designed and built to ASTM F24 amusement ride codes, TUV codes and standards, and ANSI B77 tramway codes, and the various technology components are protected by our 12 USA and European patents."

12.      In 2017, Defendant Vail purchased the Stowe Mountain Resort.

13.      In 2019, Vail became unhappy with Terra-Nova's safety recommendations and terminated Terra-Nova as a vendor - replacing it with Defendant Precisioneering.

14.      Despite having been terminated, Terra Nova proudly includes a link on its website to a page describing the Stowe Mountain Resort ZipTour® zip line course it designed, manufactured, and was installed by its subsidiary.  This includes a demonstration video explaining how to ride the Stowe ZipTour® zip line, including how to operate the trolley braking mechanism, and how to stop at the end of each span of the zip line with the narrator explaining over the video that "the faster you are riding the longer it will take your trolley to slow down and stop.  So give yourself plenty of time and distance to slow down and stop as you approach each landing platform on the tour. The goal on each span is to slow down to a gentle stop before reaching the springs."

4

15.     The demonstration video from the Terra-Nova website for riders at the ZipTour®

zip line course at Stowe Mountain Resort depicts the trolley and harness designed, engineered

and manufactured by Terra-Nova and lanyard designed and manufactured by Petzl connecting

the harness to the trolley mechanism as a safety measure should the rider's mechanical

connection to the trolley become unattached accidentally. The image below was screen-

captured from this Stowe Mountain Resort demonstration video:



16.     The narrator of the demonstration video explains that the rider depicted in the

picture above has her hands on the braking mechanism.  She has pushed the brake handle up,

which is how the brake is fully engaged.  Pulling this handle down disengages the brake and

allows the trolley to move.  The video explains that riders can control their speed by adjusting

the brake handle to an intermediate position that allows forward motion but at a slower rate of speed than if the brake were fully disengaged.

17.     Terra-Nova explains the riding experience as follows: "The zip line ride experience and excitement is enhanced when you are able to control your own speed. You are really able to play with the person you are riding next to. You can speed ahead, slow down and let them pass you, then speed up again to catch up. It's a blast! As customers approach the landing platform they begin to slow their trolleys down and come to a stop over the deck. The guides lower them to the platform and place their trolleys into their backpack to prepare them for the walk to the next span."

18.     The demonstration video from Terra-Nova's website also describes the Stowe Mountain Resort zip line course as containing three spans. Span 1 is called the "Nosedive Zip" and is 4462 feet long. Span 2 is the "Haselton Zip" and is 2247 feet long. The third span – the Perry Merrill Zip – is 3484 feet long. The Perry Merrill Zip ends at the Stowe Mountain base lodge.

19.     Terra-Nova explains the Stowe Mountain Resort zip line on its website as follows:

The Stowe ZipTour® zip line experience begins with a training session and demo zip at the base of the mountain. Guests then ride the high-speed summit Gondola to the top of the ski area, near the top of Mt. Mansfield, Vermont's highest peak. Once atop, the ZipTour® consists of three zip line spans, each with two cables side-by-side, totaling 10,193' feet of riding cable (just under two miles in length), making it the 2nd longest zip line tour in the United States.

Customers begin their ZipTour® journey down one of the longest zip lines in the USA, the Nosedive Zip. At almost 4,500 feet in length, this zip line is the 3rd longest in the contiguous USA. The views, as you can see from the photo gallery below, are incredible. Every span of the ZipTour® has 2 cables side by side so guests can enjoy this adventure with a companion.

6

The second span of the Stowe ZipTour®, the Haselton Zip, looks directly across at the famous Smuggler's Notch, which is a narrow pass through the Green Mountains. This span is all trees and sky, until you look to your right and see the resort base area far below.

The third and final span of the Stowe ZipTour® is the Perry Merrill Zip. This zip line is also one of the longest zip lines in the country. The ride experience on this span is exhilarating as you fly through the trees on the way down to the base area, which really gives you an amazing sense of your speed. This ZipTour® is almost 2 miles in length and is one of the longest zip line tours in the country.

The Stowe ZipTour® is the ultimate point-to-point sky adventure, and follows a natural and fluid pathway from Mt. Mansfield down to the Stowe Mountain Resort base area. It is an incredible experience!

20.    The Terra-Nova website also declares that "We are the original inventors and designers of the graduated spring and spacer terminal brake assembly and every ZipTour® zip line cable span is equipped with this assembly for additional stopping assistance if so needed."

21.    The "graduated spring and spacer terminal brake" as installed at Stowe Mountain Resort is also depicted in pictures and the demonstration video linked on the Terra-Nova website.  Upon information and belief, it acts like an automobile's emergency brake in the event a rider fails to stop as they approach the end of the zip line.

22.    The 2015 ZipTour® Manual states, in part:

The ZipTour® ride cycle begins when the customer leaves the top tower and ends when the customer brings his or her trolley to a stop at the landing platform. *If the customer does not stop at the designated unloading point, the trolley nose will engage the terminal brake acceptor and compress the graduated springs behind the acceptor, bringing the customer to a complete stop.*

Page 21 of 127 (emphasis added).

23.    This terminal brake assembly is installed in the space between the zip line rider landing platform and the structure to which the zipline cable is anchored a distance past the landing platform.  The following screen captures depict the terminal brake assembly and what

7

the video narrator describes as a safe stopping spot in advance of it taken on the practice span

of the Stowe Mountain Resort zip line course:



24.    The following picture captured from the Stowe demonstration video depicts the

arrangement of the terminal brake system, rider landing platform, and cable anchor structure

beyond at, upon information and belief, the end of the span where Scott Lewis was killed.



25.     It was at the end of this last span that Scott Lewis' trolley mechanism failed to brake, the emergency spring system at the platform failed to safely stop him, and the harness attachment and lanyard catastrophically failed, catapulting him all the way to the decking of the structure seen in the picture above which anchored the zip line cable at the bottom of the span. According to the VOSHA report of this accident, Mr. Lewis would not have been killed if the primary attachment lanyard had been replaced due to aging and (wear) of the lanyard." He was found under that platform with multiple compound fractures, his helmet on and his harness ripped.

26.     On that day, Thursday, September 23, 2021, Mr. Lewis was accompanying a zipline tour group on Vail's **ZipTour®** zip line course.

27.     He was a very experienced zip line rider; he had been employed by Vail's predecessor and then Vail as a guide on the Stowe Mountain Resort **ZipTour®** zip line course for more than seven years.

28.     As the tour group prepared to descend Line 6 of the Perry Merrill section of the ZipTour, Mr. Lewis and another tour guide descended ahead of the group, on parallel cables.

29.     Upon information and belief, prior to September 23, 2021, Vail fostered a competition among its employees to see who could obtain the fastest speed on its ZipTour® zip line course.

30.     Upon information and belief, several Vail employees, including Mr. Lewis, wore GPS trackers while ziplining to record their fastest speeds, and Vail was aware of and encouraged this practice.

31.     Upon information and belief, Vail encouraged its employees to achieve the fastest speeds possible on the ZipTour® zip line course because it enhanced Vail's image as supplying greater thrills for its customers, intentionally putting its employees at risk.

32.     Vail even invited local police officers to use their radar detectors to record the speed of Vail employees on the ZipTour® zip line course.

33.     Upon information and belief, on September 23, 2021, Mr. Lewis's GPS tracker recorded top speeds of 112 miles per hour on Span 1 of the ZipTour course, 99 miles per hour on Span 2, and 82 miles per hour on Span 3, the Span on which Mr. Lewis died.

34.     Upon information and belief, Mr. Lewis was traveling approximately 76 miles per hour when his trolley braking mechanism failed and his trolley impacted the terminal brake at the bottom of the Perry Merrill descent.

35.     The terminal brake, however, failed to bring Mr. Lewis to a controlled and safe stop.

36.     When Mr. Lewis impacted the terminal brake, the two lanyards attached to Mr.

10

Lewis's trolley burst, separating Mr. Lewis from the trolley mechanism and sending him flying into the very solid platform surrounding the zip line anchor many feet beyond the rider landing platform (as shown in the image in paragraph 26 above).

37.     Subsequent investigation by VOSHA revealed that the primary attachment lanyard provided for Scott's use by Vail on the day of his death was four years old and had nearly three full seasons of use.

38.     Terra-Nova had advised Vail to replace this lanyard annually or after one season of heavy use.

39.     Vail refused, challenging Terra-Nova's safety recommendation as a ploy to extract more equipment sales knowing that if it was wrong someone could die or be catastrophically injured.

40.     Vail fired Terra-Nova and hired Defendant Precisioneering, which also ignored Terra-Nova's recommendations, deeming the worn equipment adequate without any real inspections of that equipment.

41.     And what Vail and Precisioneering knew would happen actually did happen. Scott died when his worn equipment failed to stop his greater than highway-speed descent, burst, and launched him into the immovable structure anchoring the zip line cable.  Vail could easily have prevented this tragedy.  But profit was more important that a life; Scott's life.

42.     Scott left behind his three minor boys, Plaintiffs Z.L., T.L., and A.L., who were 15, 14, and 13 when their dad died.

43.     As a direct and proximate result of Scott's early death, his Estate has suffered damages and his minor children have lost the care, support and consortium with their father.

11

## Count I
## Wrongful Death
## Plaintiff v. VR US Holdings II, LLC ("Vail")

44.     The allegations in paragraphs 1 through 43 are incorporated by reference, as if fully stated herein.

45.     At all relevant times, Vail was Mr. Lewis's employer.

46.     As referenced in the factual allegations above, Vail intentionally encouraged its ZipTour employees to compete to see who could achieve the fastest speed possible on its ZipTour Adventure course.

47.     Vail failed to ensure that it and/or its agent or contractor, Precisioneering, conducted adequate safety inspections of its ZipTour course and the equipment used to operate and ride on the ZipTour course.

48.     In addition, Vail intentionally decided against replacing the lanyards used on its ZipTour course, despite specific direction from the manufacturer that such lanyards be replaced annually and/or after one season of heavy use (and despite each lanyard only costing approximately $26.00).

49.     Vail's actions were a violation of applicable VOSHA regulations and constitute negligence *per se*.

50.     Moreover, Vail's intentional actions referenced above amount to a specific intent to injure Mr. Lewis and/or demonstrate the Stowe engaged in conduct with knowledge that it is was substantially certain to cause injury or death.  Therefore, the Estate's claim is not barred by the Vermont Workers' Compensation statute, 21 V.S.A. § 622. *See Martel v. Connor Contracting, Inc.*, 208 Vt. 498, 503-512 (2018) (and Robinson, J., concurring); *Mead v. Western*

12

*Slate, Inc.*, 176 Vt. 274, 284 (2004); *Kittel v. Vermont Weatherboard, Inc.*, 138 Vt. 439, 441

(1980).

51.     Vail's actions referenced above were a direct and proximate cause of Mr. Lewis's

death.

52.     As a direct and proximate result of Vail's intentional actions, resulting in Mr.

Lewis's death, his Estate suffered damages recoverable under 14 V.S.A. § 1492.

53.     Defendant Vail is liable to Plaintiffs for all damages allowed by law for the

injuries, damages, and losses sustained by Plaintiffs as a result of its wrongful conduct.

## Count II
## Negligence
## Plaintiff v. Terra-Nova LLC of Utah ("Terra-Nova")

54.     The allegations in paragraphs 1 through 53 are incorporated by reference, as if

fully stated herein.

55.     Terra-Nova designed and manufactured the ZipTour® zipline course, and

designed and/or selected all the component parts used on the ZipTour® zipline course on which

Mr. Lewis died.

56.     Terra-Nova owed a duty of care to users of the ZipTour® zipline course to design

and manufacture it in a reasonable and prudent manner, and to provide reasonable warnings

to foreseeable users like Mr. Lewis about use of the ZipTour® zipline course.

57.     The trolley brake system and/or terminal brake system on the ZipTour course

were negligently designed and/or manufactured by Terra-Nova in that one or both failed to

bring Mr. Lewis to a controlled and safe stop.

13

58.     Terra-Nova also negligently designed and/or selected and incorporated into its zipline harnessing system the components which connected Mr. Lewis to the zipline trolley which foreseeably failed in whole or part causing him to become disconnected from the trolley and catastrophically thrown against the platform surrounding the zipline cable anchor.

59.     The manner in which Mr. Lewis rode the ZipTour course was reasonably foreseeable to Terra-Nova.

60.     The trolley braking mechanism and terminal brake system could have and should have been designed and manufactured to bring a zipline user of average weight to a safe and controlled stop, regardless of that user's rate of speed on the zipline, or designed in such a way that a zipline user could not exceed a safe speed such that the user could be brought to a safe and controlled stop.

61.     The components which connected the rider to the trolley could have and should have been designed, manufactured and/or selected with sufficient strength and durability to keep a zipline rider safely connected to the trolley in the event the braking mechanism and/or terminal braking system failed to stop the rider.

62.     The failure of the terminal brake system and/or the lanyard assembly and/or the overall design of the zipline system caused or substantially contributed to Mr. Lewis's death.

63.     Upon information and belief, Terra-Nova also instructed Stowe ZipTour guides to make a knot in the attachment lanyards which lowered the strength of the lanyards and, in Mr. Lewis's case, ultimately burst under the foreseeable circumstances of this case.

64.     As a direct and proximate result of Terra-Nova's negligent design and manufacture of the ZipTour course, including its trolley brake and terminal brake systems,

14

zipline components, and negligent instruction to Stowe regarding its recommended use of

knotting the attachment lanyards, resulting in Mr. Lewis's death, his Estate suffered damages

recoverable under 14 V.S.A. § 1492.

65.     Defendant Terra-Nova is liable to Plaintiffs for all damages allowed by law for the

injuries, damages, and losses sustained by Plaintiffs as a result of its negligence.

## Count III
## Strict Liability
## Plaintiff v. Terra-Nova Terra-Nova

66.     The allegations in paragraphs 1 through 65 are incorporated by reference, as if

fully stated herein.

67.     The design of the ZipTour® zipline, including but not limited to its components,

was defective and unreasonably dangerous to foreseeable users including Scott Lewis because

it did not provide a safe way for the zipline rider to stop at the speeds a rider could attain on

the course should the rider hit the terminal brake system.

68.     Further, the design was rendered defective and unreasonably dangerous

because of Terra-Nova's failure to warn foreseeable users, including Scott Lewis, of the dangers

associated with high speed descent on the ZipTour® zipline, including and not limited to the

foreseeable risk that the braking mechanism and terminal braking system may not safely stop a

rider, and that the system of components used to connect the rider to the trolley could not

sustain the force of a high speed impact with the terminal braking system and could fail

allowing the rider to become disconnected from the trolley resulting in substantial harm and/or

death.

69.     As a direct and proximate result of the defective and unreasonably dangerous

conditions of the ZipTour® zipline course and its component parts, designed, manufactured and

sold by Terra-Nova, and Terra-Nova's failure to adequately warn or instruct users about the

inherent risks of high speed descent on the zipline, Mr. Lewis suffered a horrific death causing

his Estate to suffer damages recoverable under 14 V.S.A. § 1492.

70.     Defendant Terra-Nova is strictly liable to Plaintiffs for all damages allowed by law

for the injuries, damages, and losses sustained by Plaintiffs as a result of the defective and

unreasonably dangerous condition of the ZipTour® zipline course and its component parts, and

Terra-Nova's failure to warn.

## Count IV
### Negligence
### Plaintiff v. Zip Install, LLC

71.     The allegations in paragraphs 1 through 70 are incorporated by reference, as if

fully stated herein.

72.     Zip Install, LLC installed the ZipTour® zipline course and its component parts on

which Mr. Lewis died.

73.     Zip Install, LLC owed a duty of care to foreseeable users of the ZipTour® zipline

course including Mr. Lewis to install the course and its component parts on a reasonable and

prudent manner.

74.     Upon information and belief, the trolley brake and terminal brake systems on

the ZipTour® zipline course were negligently installed by Zip Install, LLC in that it failed to bring

Mr. Lewis to a controlled and safe stop.

16

75.     Zip Install also negligently installed the zipline component parts which failed in whole or part causing Mr. Lewis to become disconnected from the trolley and catastrophically thrown against the platform surrounding the zipline cable anchor.

76.     The manner in which Mr. Lewis rode the ZipTour course was reasonably foreseeable to Zip Install, LLC.

77.     These failures substantially caused and/or substantially contributed to Mr. Lewis's death.

78.     As a direct and proximate result of Zip Install, LLC's negligent installation of the ZipTour® zipline course, including its terminal brake system and/or the lanyard assembly and/or other component parts of the zipline course caused or substantially contributed to cause Mr. Lewis's death, his Estate suffered damages recoverable under 14 V.S.A. § 1492.

79.     Defendant Zip Install, LLC is liable to Plaintiffs for all damages allowed by law for the injuries, damages, and losses sustained by Plaintiffs as a result of its negligence

## Count V
## Negligence
### Plaintiff v. Petzl America, Inc.

80.     The allegations in paragraphs 1 through 79 are incorporated by reference, as if fully stated herein.

81.     Petzl America, Inc. designed, manufactured, and/or sold to Terra-Nova the lanyards, carabiner and GRIGRI ("Petzl Components") as component parts of the ZipTour® zipline course that Terra-Nova old to Stowe Mountain Resort, and which was used by Mr. Lewis at the time of his death.

17

82.     The Petzl Components were intended to secure a zipline rider to the trolley system used for ziplining, and upon information and belief, Petzl America, Inc. was aware the the Petzl Components would be used for this purpose.

83.     Mr. Lewis's use of these components at the time of his death was a reasonably foreseeable use.

84.     Petzl America, Inc. negligently designed and/or manufactured and/or recommended for use in the ZipTour® zipline course the Petzl Components at issue such that they failed, causing Mr. Lewis to be separated from the ZipTour® zipline course and flung to his death.

85.     Petzl America, Inc. negligently failed to warn users of these components that they could fail under reasonably foreseeble conditions like those at issue in this case.

86.     The failure of the Petzl Components caused or substantially contributed to cause Mr. Lewis's death.

87.     As a direct and proximate result of Petzl America, Inc.'s negligent design and/or manufacture and/or recommendation for inclusion in the ZipTour® zipline course of the Petzl Components, and its negligent failure to warn for the foreseeable failure of these components under the use in the ZipTour® zipline course sold to Stowe Mountain Resort, Mr. Lewis suffered a horrific death which resulted in his Estate suffering damages recoverable under 14 V.S.A. § 1492.

88.     Defendant Petzl America, LLC is liable to Plaintiffs for all damages allowed by law for the injuries, damages, and losses sustained by Plaintiffs as a result of its negligence.

18

**Count VI**
**Negligence**
**Plaintiff v. JB Technologies, LLC ("Precisioneering")**

89.    The allegations in paragraphs 1 through 88 are incorporated by reference, as if fully stated herein.

90.    Precisioneering was responsible for annual safety inspections of Stowe's ZipTour course, and responsible for inspecting the equipment used to operate and ride on Stowe's ZipTour course.

91.    Precisioneering owed a duty of care towards users of the ZipTour® zipline course at Stowe including Mr. Lewis to conduct reasonable and prudent safety inspections of the ZipTour® zipline course and its component parts.

92.    Upon information and belief, Precisioneering negligently failed to conduct its safety inspections and/or negligently failed to conduct them in a reasonably prudent manner or in accordance with applicable law, including but not limited to VOSHA regulations.

93.    Precisioneering also failed to conduct safety inspections of Stowe's protective equipment necessary for the ZipTour® zipline course, including (but not limited to) inspection of the attachment lanyards, carabineers and GRIGRI required for use by zipline users.

94.    Precisioneering negligently failed to identify that the attachment lanyards, carabineers and GRIGRI – including those used by Mr. Lewis – should have been replaced before the date of Mr. Lewis's death, given (a) the nature and duration of their use of the lanyards, (b) the manufacturer's recommendation, and specific notice to Stowe and Precisioneering, that the lanyards needed to be replaced at least annually or after a season of heavy use, and (c) the worn appearance of the lanyards.

19

95.     Precisioneering also negligently failed to identify that the configuration of these

components as installed and used at Stowe created a foreseeable, unreasonably dangerous

condition for users of the ZipTour zipline course, including Mr. Lewis.

96.     Precisioneering's negligence in conducting safety inspections of the ZipTour

course, and the equipment used to operate and ride on same, caused or substantially

contributed to cause Mr. Lewis's death.

97.     As a direct and proximate result of Precisioneering's negligence, resulting in Mr.

Lewis's death, his Estate suffered damages recoverable under 14 V.S.A. § 1492.

98.     Defendant Precisioneering is liable to Plaintiffs for all damages allowed by law

for the injuries, damages, and losses sustained by Plaintiffs as a result of its negligence.

## Count VII
## Loss of Companionship
## (Against All Defendants)

99.     The allegations in paragraphs 1 through 98 are incorporated by reference, as if

fully stated herein.

100.    At the time of his death, Mr. Lewis had three minor children, Z.L., T.L., and A.L.,

who are his next of kin.

101.    As a direct and proximate result of Mr. Lewis's death, caused by the actions of

the Defendants (alone or in combination), Mr. Lewis's minor children have suffered pecuniary

injuries from the loss of companionship, love, support, care, protection, and intellectual and

moral training of their father, who was only 53 years old at the time of his death.

102.    Defendants are liable to Plaintiffs Z.L., T.L., and A.L. for all damages allowed by

law for the injuries, damages, and losses sustained by them as a result of its negligence

20

**Count VIII**
**Punitive Damages (Against Vail)**

103.    The allegations in paragraphs 1 through 102 are incorporated by reference, as if fully stated herein.

104.    Vail's actions as described in this Complaint were deliberate and outrageous.

105.    Vail's actions demonstrate a conscious disregard for the rights and safety of Scott Lewis and other employees and members of the public using the ZipTour® zip line course at Stowe Mountain Resort.

106.    Vail's actions are that of such willful, wanton and reckless misconduct, malice, fraud, wantonness, oppression, recklessness and/or an entire want of care for the rights and safety of Scott Lewis, sufficient to raise the presumption of conscious indifference to consequences.

107.    Vail's misconduct is so aggravating that it authorizes, warrants, and demands the imposition of substantial punitive damages against Vail pursuant to Vermont law.

**Count IX**
**Punitive Damages (Against JB Technologies, LLC ("Precisioneering"))**

108.    The allegations in paragraphs 1 through 107 are incorporated by reference, as if fully stated herein.

109.    Precisioneering's actions as described in this Complaint were deliberate and outrageous.

110.    Precisioneering's actions demonstrate a conscious disregard for the rights and safety of Scott Lewis and other employees and members of the public using the ZipTour® zip line course at Stowe Mountain Resort.

21

111.    Precisioneering's actions are that of such willful, wanton and reckless

misconduct, malice, fraud, wantonness, oppression, recklessness and/or an entire want of care

for the rights and safety of Scott Lewis, sufficient to raise the presumption of conscious

indifference to consequences.

112.    Precisioneering's misconduct is so aggravating that it authorizes, warrants, and

demands the imposition of substantial punitive damages against Precisioneering pursuant to

Vermont law.


* * *

### *Jury Trial Demand*

A jury trial is demanded on all claims so triable.

* * *

WHEREFORE, Molly Lewis, Executrix of the Estate of Scott Lewis, and Parent and

Legal Guardian of Z.L., T.L., and A.L. demands judgment against Defendants in such amounts as

permitted within the jurisdiction of this Court, and in an amount to be determined by a jury, as

this Court will compensate for all injuries, damages, and punitive damages as well as the costs

of this action, including interest, attorney's fees, and costs together with such other relief as

the Court deems just and fair.

Respectfully submitted,

Molly Lewis, Executrix of the Estate of Scott Lewis, and parent and legal guardian of Z.L., T.L., and A.L.

By her Attorneys,
ORR & RENO, P.A.

/s/ Lisa Snow Wade

Date: September 22, 2023          By: _____

Lisa Snow Wade, Esq. (V.T. Bar # 4118)
James F. Laboe, Esq. (N.H. #11815) (Motion for *Pro Hac Vice* admission to be filed)
Lynnette V. Macomber, Esq. (N.H. #271596) (Motion for *Pro Hac Vice* admission to be filed)
45 South Main Street
P.O. Box 3550
Concord, NH 03302-3550
Tel: (603) 224-2381
lwade@orr-reno.com
jlaboe@orr-reno.com
lmacomber@orr-reno.com