```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT

Molly Lewis, as Executrix     )
of the Estate of Scott Lewis, )
and Parent and Legal Guardian )
of Z.L., T.L., and A.L.,      )
                              )
        Plaintiff,            )
                              )
     v.                       )    Case No. 2:23-cv-639
                              )
VR US Holdings II, LLC, d/b/a )
Stowe Mountain Resort, Terra- )
Nova LLC, Zip Install, LLC,   )
Petzl America, Inc., and JB   )
Technologies, LLC d/b/a       )
Precisioneering,              )
                              )
        Defendants.           )
```

**OPINION AND ORDER**

This case arises out of the tragic death of Scott Lewis, formerly a professional zip line guide at Stowe Mountain Resort. Lewis died after he ejected from a zip line while traveling at a high rate of speed. Molly Lewis ("Plaintiff"), as Executrix of Scott Lewis's Estate ("Estate") and parent and legal guardian of the Lewis children, brings this action against several Defendants, including Lewis's former employer VR US Holdings II, LLC d/b/a Stowe Mountain Resort ("Vail"). The Second Amended Complaint asserts three causes of action against Vail: wrongful death (Count I), loss of companionship (Count VII), and punitive damages (Count VIII).

Vail has moved to dismiss for failure to state a claim, arguing that Plaintiff's exclusive remedy is workers' compensation benefits. Vail moved to dismiss previously, and Court granted the motion but allowed Plaintiff to file an amended complaint. The Court also granted Plaintiff's request for time in which to conduct limited discovery. Plaintiff subsequently set forth additional factual allegations in a Second Amended Complaint. Now before the Court is Vail's motion to dismiss Counts I, VII, and VIII of the Second Amended Complaint, in which Vail again argues that workers' compensation is Plaintiff's exclusive remedy. For the reasons set forth below, Vail's motion to dismiss is granted.

## Factual Background

The Second Amended Complaint alleges that in September 2021, 53-year-old Scott Lewis was working at Stowe Mountain Resort as a guide on the resort's zip line course. Lewis had worked as a guide at Stowe Mountain Resort for over seven years. Vail is the owner of Stowe Mountain Resort and was Lewis's employer.

Plaintiff claims that Vail fostered competition among employees to see who could achieve the fastest speeds on the zip line course. Vail employees, including Lewis, wore GPS trackers to record their speeds, "and Vail was aware of and encouraged this practice." ECF No. 67 at 10, ¶ 30. Vail also invited local

2

police officers to use radar detectors to record employees' speeds. *Id.*, ¶ 32. The Second Amended Complaint alleges, upon information and belief, that Vail "encouraged its employees to achieve the fastest speeds possible on the ZipTour zip line because it enhanced Vail's image as supplying greater thrills for its customers, intentionally putting its employees at risk." *Id.*, ¶ 31.

On September 23, 2021, while leading a group of resort guests on the course, Lewis and another guide descended ahead of the group on parallel lines. Lewis is believed to have been traveling between 30 and 51 miles per hour when his trolley impacted the terminal brake at the bottom of one portion of the zip line course. The terminal brake failed to bring Lewis to a controlled stop, at which point the two lanyards attached to the trolley burst, "separating Mr. Lewis from the trolley mechanism and sending him flying into the very solid platform surrounding the zip line anchor many feet beyond the rider landing platform." *Id.* at 11, ¶ 38. Lewis died as a result of his injuries.

The Complaint alleges that an investigation by the Vermont Occupational Safety and Health Administration ("VOSHA") determined that Lewis's primary attachment lanyard, provided by Vail, was four years old and had nearly three full seasons of use. Defendant Terra-Nova LLC ("Terra-Nova") is alleged to be

3

the designer, engineer, selector and/or builder of components for the zip line course. On October 24, 2019, approximately two years before Lewis's death, Terra-Nova issued a safety bulletin advising Vail to replace lanyards annually or after one season of heavy use. The Second Amended Complaint alleges that Jaime Barrow, Director of Operations Training and Risk Management at Vail Resorts, e-mailed Terra-Nova and challenged the need for yearly replacement, accusing Terra-Nova of issuing the alert to enhance gear sales. Barrow also allegedly emailed Jeff Borba, owner of Vail's vendor co-Defendant JB Technologies, LLC ("Precisioneering")[1], with the message: "Tear [Terra-Nova] a new a-hole please." *Id.* at 12, ¶ 43.

When Borba contacted Terra-Nova and questioned the safety bulletin, Terra-Nova explained that annual replacement of lanyards was necessary because the lanyards "can be susceptible to stiffness, flat spots, core shots, glazing, discoloration, damaged sheaths, and hour-glassing . . . ." *Id.* at 13, ¶ 46. Terra-Nova further explained that "soft goods deteriorate and lose their strength, sometimes unnoticeably, and there is no correct or perfect timeline for retirement. We are basing our retirement policy on our extensive inspection experience. We do

---

[1] According to Plaintiff, at some point Vail hired Precisioneering to replace Terra-Nova. ECF No. 82 at 5.

believe this retirement criteria should be applied immediately to reduce hazards and possible injury in the future." *Id.*

In a subsequent conference call with Terra-Nova, Borba allegedly stated that Vail would not be following the safety bulletin and would not be replacing the main attachment lanyards annually. Barrow suggested that Borba "educate" other clients of Terra-Nova that the company "is full of shit and does not have their best interests in mind." *Id.* at 14, ¶ 50. Barrow and Borba also discussed, via email, ways in which to pressure Terra-Nova by threatening harm to its business reputation. Vail did not renew its contract with Terra-Nova for Annual Inspection and Training after 2019.

In March 2020, Barrow emailed others at Vail with a meeting invitation about the Terra-Nova safety bulletin, highlighting "the one about replacing lanyards and other soft goods." *Id.* at 15, ¶ 56. While that email has been produced, Plaintiff reports that Vail redacted the final line of the email citing "attorney-client communication." In light of the redaction, Plaintiff argues there is a question of material fact regarding the full content of Barrow's message.[2]

---

[2] Plaintiff has not moved to compel production of the email and has not petitioned the Court to conduct an *in camera* review.

5

The Second Amended Complaint alleges that Vail deprived its employees of information required to conduct proper inspections "by making the intentional choice to omit the Terra-Nova safety alert from the ZipTour Operations and Maintenance manual." *Id.*, ¶ 55. Plaintiff also claims that there was no inspection of the zip line course in 2020. Precisioneering conducted an inspection in 2021, though several items, including trolleys and operation/maintenance training records, were not available. The Second Amended Complaint claims, upon information and belief, that the lanyards were not inspected in either 2020 or 2021. Also, Vail allegedly failed to purchase any new primary or back-up lanyards between 2019, when Terra-Nova issued its safety bulletin, and Lewis's accident in September 2021.

Subsequent inspection of Lewis's equipment by a VOSHA consultant found that "the general condition of both lanyards (one intact and one broken) showed them to have been produced in 2017 . . . . Both showed general evidence of excessive aging and glazing including heavier wear areas where the lanyard was utilized in contact with the misuse of a GRIGRI assisted belay device." *Id.* at 17, ¶ 61(e). In his written report, the consultant concluded that

> [i]n my personal opinion this tragic, regrettable employee fatality was entirely avoidable. In what appears to me to be an effort to reduce costs, Vail Resorts had knowledge of but willfully did not comply with OSHA regulation; ANSI/PRCA safety standards;

6

> ANSI/ASSP safety standards; manufacturer
> specifications, requirements, and safety notices, and
> tried to downplay various manufacturer specifications.

ECF No. 67-5 at 8. According to the Second Amended Complaint, "what Vail and Precisioneering knew would happen actually did happen. [Lewis] died when his worn equipment failed to stop [his] high-speed descent, burst, and launched him into the immovable structure anchoring the zip line cable. Vail could easily have prevented this tragedy. But profit was more important than a life; Scott's life." ECF No. 67 at 16, ¶ 60.

Count I of the Second Amended Complaint asserts a claim of wrongful death against Vail. The allegation states that "Vail's intentional actions referenced above amount to a specific intent to injure Mr. Lewis." *Id.* at 22, ¶ 78. The allegation also asserts that "[a] reasonable factfinder could infer from Mr. Barrow's actions that he had animus towards his employees' safety and that he had a specific intent to injure Mr. Lewis." *Id.*, ¶ 80. Given such alleged specific intent, Plaintiff contends that "the Estate's claim is not barred by the Vermont Workers' Compensation statute, 21 V.S.A. § 622." *Id.* at 23, ¶ 80. Count VII of the Second Amended Complaint, brought on behalf of the Lewis children, asserts a loss of companionship claim against all Defendants. Count VIII seeks punitive damages solely against Vail. Now before the Court is Vail's motion to dismiss

7

Counts I, VII, and VIII, arguing that they are barred by the Vermont workers' compensation statute.

## Discussion

Vail moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Reviewing a motion to dismiss under Rule 12(b)(6), the Court liberally construes the claims, accepts the factual allegations in the Complaint as true, and draws all reasonable inferences in the non-movant's favor. *See La Liberte v. Reid*, 966 F.3d 79, 85 (2d Cir. 2020). However, the Court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

The Vermont workers' compensation statute, 21 V.S.A. § 622, states:

> [T]he rights and remedies granted by the provisions of [the workers' compensation statute] to an employee on account of a personal injury for which he or she is entitled to compensation under the provisions of this chapter shall exclude all other rights and remedies of

8

> the employee, the employee's personal representatives, dependents or next of kin, at common law or otherwise on account of such injury.

21 V.S.A. § 622. Plaintiff has not disputed Vail's assertion that the Estate is receiving benefits under the workers' compensation statute. ECF No. 21 at 2. Plaintiff nonetheless contends that she is entitled to bring this action, notwithstanding the exclusive remedy language in 21 V.S.A. § 622, based upon the nature of Vail's alleged conduct. Specifically, Plaintiff argues that the allegations in the Complaint amount to a plausible claim that Vail had specific intent to injure Lewis, and that its actions were therefore outside the protection of the workers' compensation statute's exclusivity provision.

Because federal jurisdiction in this case is based on diversity of citizenship, the Court must follow Vermont's substantive law. *See Marina Mgmt. Corp. v. Brewer*, 572 F.2d 43, 45 (2d Cir. 1978) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). In *Martel v. Connor Contracting, Inc.*, 2018 VT 107, the Vermont Supreme Court tracked the history of its rulings on the workers' compensation statute's exclusivity provision. The court highlighted *Kittell v. Vermont Weatherboard, Inc.*, 138 Vt. 439 (1980), in which an employee claimed that he was injured after his employer had him operate a saw, without any training or experience, from which the employer had removed all safety

9

equipment. 2018 VT 107, ¶ 8. *Kittell* held that while the plaintiff had alleged a willful and wanton act by the employer, "[n]othing short of a specific intent to injure falls outside the scope of the [workers' compensation] Act." 138 Vt. at 441. Citing the need to "harmoniz[e] the law of workmen's compensation," *Kittell* noted that "the overwhelming weight of authority in other jurisdictions" held that "gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence" is insufficient to avoid an exclusivity provision. *Id.* (quotation marks and citation omitted). Foreseeable injury is equally insufficient. *See Martel*, 2018 VT 107, ¶ 14 (citing *Kittell*, 138 Vt. at 440-41).

*Martel* made clear that "*Kittell* remains the standard in Vermont, and specific intent under *Kittell* is required to prove that an injury that would otherwise be compensable through workers' compensation has not occurred accidentally and the employee may, therefore, pursue an alternative remedy." 2018 VT 107, ¶ 14. *Martel* further commented that "[i]ntent to injure under *Kittell* is a high bar - it reaches only those instances where an employer deliberately causes an employee an injury." *Id.* (citing *Kittell*, 138 Vt. at 440).[3]

---

[3] Then-Justice Robinson was critical of the majority's ruling, noting in her concurrence that "*Kittell* represents an extremely stringent view of intent from which many states have since evolved." *Id.*, ¶ 32.

Given that deliberate intent to cause injury is the current standard under Vermont law, the Court turns to the allegations in the Second Amended Complaint to determine whether Plaintiff sets forth any plausible claims. The Court previously granted Vail's initial motion to dismiss, and allowed Plaintiff additional time to conduct discovery such that she might amend her Complaint using newly discovered facts. Plaintiff availed herself of that opportunity and has added several new allegations, including the communications between Vail, Terra-Nova, and Precisioneering discussed above. Those allegations, which the Court must accept as true at this stage in the case, offer troubling insights into Vail's disregard for safety warnings. Plaintiff argues that a reasonable factfinder could view such disregard, together with the use of foul language and other related facts, as circumstantial evidence that Vail intended to injure its employees.

When considering the question of intent, the Court is mindful that direct evidence is unlikely to be presented, and that it must exercise caution when dismissing a claim. *See, e.g., Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995) ("Judgments about intent are best left for trial."). With respect to intent in the context of employment discrimination, the Second Circuit has held that "[t]he facts . . . need not give plausible support to the ultimate question of whether the

11

adverse employment action was attributable to discrimination," but rather "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Applying that reasoning here, the Court reviews the Second Amended Complaint for plausible support of at least "a minimal inference" of intent to cause injury. *Id.*

Notwithstanding that minimal bar, the Court finds that Plaintiff has failed to state a plausible claim. Barrow's communications regarding safety issues appear to have been triggered by his belief that Terra-Nova was trying to sell additional equipment. ECF No. 67 at 12, ¶ 12 (citing Barrow email accusing Terra-Nova of issuing the safety alert to "benefit manufacturer[']s gear sales"). The Second Amended Complaint itself concludes that Vail was prioritizing profit over safety. *Id.* at 16, ¶ 60 ("Vail could easily have prevented this tragedy. But profit was more important than a life; Scott's life."). Barrow's alleged responses to the safety bulletin, including his vulgar remarks, may be characterized as reckless or willful disregard for a legitimate issue potentially impacting both guest and employee safety. But as the Vermont Supreme Court has made clear, such characterizations fall short of the specific intent standard. *Martel*, 2018 VT 107, ¶ 14.

12

The Second Amended Complaint alleges more generally that Barrow sought to avoid certain safety restrictions. For example, Plaintiff cites his efforts in 2009, before he worked for Vail, advocating for industry safety standards that did not require compliance with state or federal law. Nothing in that allegation suggests that Barrow, many years later, intended to cause injury to either Vail employees or Lewis specifically.

The VOSHA inspection allegedly revealed additional conduct by Vail that could have resulted in injuries, including instructing employees to misuse Petzl's belay device; instructing employees to misuse lanyards by tying knots in them, even though Vail knew that tying knots lowered a lanyard's tensile strength; and requiring employees to operate the zip line with a "substandard" deceleration device. ECF No. 67 at 16-17. Plaintiff further claims that Vail avoided hiring a qualified third party to perform zip line inspections, and instead used an in-house inspector who was under-qualified and failed to identify equipment weaknesses and code violations. Employee reports of equipment failures were reportedly ignored. Plaintiff argues that these additional facts bolster the inference that Vail acted with specific intent to cause injury.

These allegations do not offer a plausible contention that Vail intended to injure its employees. Nor do they allow for an inference of such intent. Vermont's specific intent standard

13

requires an intentional act undertaken for the purpose of inflicting a certain injury. For example, "if the employer, angry at the employee, punches the employee in the nose, the employer's tort is intentional in a way that permits a tort claim by the employee against the employer." Restatement (Third) of Torts: Phys. & Emot. Harm § 1, comment a (discussing application of the specific intent standard in the context of workers' compensation). Here, the Second Amended Complaint does not offer a plausible claim that Vail's actions, though allegedly egregious, were taken with the intent to produce such a specific harm.

Plaintiff claims support from this Court's ruling in *Buksh v. Sarchino*, 2:21-cv-190, 2022 WL 3444980, at *8 (D. Vt. Aug. 17, 2022), in which the complaint alleged both specific animus toward the plaintiffs and actions taken to injure those same plaintiffs. *Buksh* is distinguishable insofar as the instant case presents no evidence of animus toward Vail employees. As discussed previously, the Second Amended Complaint may allow for inferences of reckless or willful behavior regarding safety, but offers no allegations from which to infer that Vail was motivated to cause injuries to either its zip line guests or its personnel.

Plaintiff also cites *Daniels v. Venta Corp.*, in which the court found the employer knew "with 100% certainty" that the

employee would suffer injury, thus giving rise to an inference of specific intent. 221 N.E.3d 503, 511 (Ill. Ct. App. 2022). This case, while alleging significant disregard for employee safety, does not allege that level of certainty with respect to any given employee or group of employees, and thus fails to allow for such an inference. *See, e.g., Martel*, 2018 VT 107, ¶ 15 ("the record does not include facts permitting the inference that [the defendant] deliberately intended to harm plaintiff").

Finally, Plaintiff relies on *Stamp Tech, Inc. ex rel. Blair v. Ludall/Thermal Acoustical, Inc.*, 2009 VT 91 ("*Stamp Tech*"), an employee accident case in which the Vermont Supreme Court reversed and remanded the lower court's summary judgment ruling in favor of the employer. Addressing the question of specific intent, *Stamp Tech* warned that "[i]ntent must often be inferred from a party's acts, and where intent is a dispositive issue, courts should exercise caution in granting summary judgment." 2009 VT 91, ¶ 31. The court then reasoned that "such caution [was] especially appropriate" in that case since material facts regarding the presence, and possible removal, of a machine safety guard remained in dispute. This case involves no such disputes of fact, as the Court accepts the allegations in the Second Amended Complaint as true and draws all reasonable inferences in favor of the Plaintiff. *See La Liberte*, 966 F.3d at 85. Having reviewed those facts, and allowed for all

15

reasonable inferences, the Court finds that Plaintiff's allegations do not offer plausible claims sufficient to avoid the statutory exclusivity provision.

In *Martel*, the Vermont Supreme Court found that "[p]laintiff essentially asks us to hold that the failure to comply with safety regulations is sufficient in and of itself to meet the level of intent necessary to circumvent workers' compensation as an exclusive remedy. Such a holding would be contrary to Vermont statute." *Id.*, ¶ 16. In this case, Plaintiff alleges safety code violations, disregard for product safety alerts, and conduct that encouraged unsafe practices. Plaintiff does not allege facts to support an inference of specific intent to cause injury.

The Court does not reach this conclusion lightly, as workers' compensation benefits may not fully address the harm suffered by the Lewis family as a result of Vail's alleged actions. In *Kittell*, the Vermont Supreme Court explained that such a result is the product of the Vermont Legislature's choice to adopt a statutory workers' compensation scheme: "We are not unmindful that in individual cases this may work some hardship, but where the Legislature has determined that the benefits derived from quick and certain basic compensation outweigh those from delayed and contingent full compensation, we are unwilling to disturb this choice." 138 Vt. at 441. As this Court is bound

by Vermont law, and *Martel* recently confirmed the specific intent standard applicable to the facts of this case, Vail's motion to dismiss must be granted.

## Conclusion

For the reasons set forth above, Vail's motion to dismiss the claims brought against it in Counts I, VII and VIII of the Second Amended Complaint (ECF No. 76) is granted.

DATED at Burlington, in the District of Vermont, this 18th day of August 2025.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge