UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
Molly Lewis, as Executrix     )
of the Estate of Scott Lewis, )
and Parent and Legal Guardian )
of Z.L., T.L., and A.L.,      )
                              )
        Plaintiff,             )
                              )
    v.                        )      Case No. 2:23-cv-639
                              )
VR US Holdings II, LLC, d/b/a )
Stowe Mountain Resort, Terra- )
Nova LLC, Zip Install, LLC,   )
Petzl America, Inc., and JB   )
Technologies, LLC d/b/a       )
Precisioneering,              )
                              )
        Defendants.           )
```

**OPINION AND ORDER**

This case arises out of the death of Scott Lewis, formerly a professional zip line guide at Stowe Mountain Resort. Lewis died after he ejected from a zip line while traveling at a high rate of speed. Molly Lewis ("Plaintiff"), as Executrix of Scott Lewis's Estate ("Estate") and parent and legal guardian of the Lewis children, brings this action against several Defendants, including Petzl America, Inc. ("Petzl"). Petzl allegedly provided various components used on the Stowe Mountain Resort zip line course. Plaintiff claims that Petzl is liable for the negligent design, manufacture, marketing and sale of such components.

1

Pending before the Court is Petzl's motion to dismiss for failure to state a claim. For the reasons set forth below, the motion to dismiss is denied.

## Factual Background

Plaintiff's Second Amended Complaint alleges that in September 2021, 53-year-old Scott Lewis was working at Stowe Mountain Resort as a guide on the resort's zip line course. On September 23, 2021, while leading a group of resort guests on the course, Lewis and another guide descended ahead of the group on parallel lines. Lewis is believed to have been traveling between 30 and 51 miles per hour when his trolley impacted the terminal brake at the bottom of one portion of the zip line course. The terminal brake failed to bring Lewis to a controlled stop, at which point the two lanyards attached to the trolley burst, "separating Mr. Lewis from the trolley mechanism and sending him flying into the very solid platform surrounding the zip line anchor many feet beyond the rider landing platform." ECF No. 67 at 11, ¶ 38. Lewis died as a result of his injuries.

Petzl is alleged to have designed, manufactured, marketed and sold various components of the zip line course. Such components included lanyards that connected the rider's harness to the zip line trolley mechanism. A lanyard served as a safety device in the event the rider's mechanical connection to the trolley became detached by accident. The zip line was also

equipped with a belay device manufactured by Petzl, known as a "GriGri."

Plaintiff's opposition to the motion to dismiss submits that the attachment lanyard used by Lewis was the Petzl lanyard known as the "Jane I." ECF No. 83 at 3. Plaintiff contends that "[t]he failure of this lanyard, along with use of Petzl's GriGri device in a manner that violated OSHA regulations and industry standards, were among the primary factors identified by [the Vermont Occupational Safety and Health Administration ("VOSHA")] and its expert as causing Scott Lewis's death." *Id.*

Stowe Mountain Resort is owned by Defendant VR US Holdings II, LLC ("Vail"). In or around 2014/2015, Vail contracted with Defendant Terra-Nova LLC ("Terra-Nova") to install the zip line. The Second Amended Complaint alleges that Terra-Nova designed, engineered, selected and/or built zip line course components, including the trolley and harness system. Terra-Nova was also hired by Vail to inspect and maintain the course.

In October 2019, two years before Lewis's accident, Terra-Nova issued a safety alert recommending annual replacement of the main attachment lanyards. Terra-Nova also advised that backup lanyards had a maximum lifespan of five years provided they passed all daily, monthly, and yearly inspections. Vail's Director of Operations Training and Risk Management, Jaime Barrow, allegedly challenged Terra-Nova's safety alert, accusing

3

Terra-Nova of issuing the alert in order to increase its gear sales.

Defendant JB Technologies, LLC ("Precisioneering") is an engineering company hired by Vail to conduct safety inspections of the zip line course. On October 25, 2019, Precisioneering's owner, Jeff Borba, also challenged the Terra-Nova safety alert. On December 16, 2019, Terra-Nova responded to Borba and explained that annual replacement of lanyards was necessary because the lanyards "can be susceptible to stiffness, flat spots, core shots, glazing, discoloration, damaged sheaths, and hour-glassing . . . ." ECF No. 67 at 13, ¶ 46. Terra-Nova further explained that "soft goods deteriorate and lose their strength, sometimes unnoticeably, and there is no correct or perfect timeline for retirement. We are basing our retirement policy on our extensive inspection experience. We do believe this retirement criteria should be applied immediately to reduce hazards and possible injury in the future." *Id.* In a subsequent conference call, Borba allegedly informed Terra-Nova that Vail would not be following the safety bulletin and would not be replacing the main attachment lanyards annually.

In early 2020, Borba allegedly contacted Petzl regarding the Terra-Nova safety bulletin, asking Petzl for its opinion on gear replacement and inspection. Petzl allegedly stated in reply that its Personal Protective Equipment ("PPE") must be inspected

4

before each use, and that an "in depth inspection of your PPE must be carried out by a component inspector" pursuant to "applicable legislation, and intensity of use" and "at least once every 12 months." *Id.* at 14, ¶ 52. The Second Amended Complaint alleges that Petzl had standard inspection forms for each element of PPE, including connectors, helmets, belay devices, harnesses, and lanyards, and that Vail purposefully chose not to use those forms for inspections.

Plaintiff claims that there was no inspection of the zip line in 2020, and that the PPE used by Vail employees, including lanyards, were not inspected in either 2020 or 2021. The Second Amended Complaint further alleges that Vail did not purchase any new primary or back-up lanyards between the time Terra-Nova issued its safety bulletin in 2019 and Lewis's accident in 2021.

After Lewis's accident, his equipment was inspected by a consultant retained by VOSHA. The consultant found that "the general condition of both lanyards . . . showed them to have been produced in 2017 . . . . Both showed general evidence of excessive aging and glazing including heavier wear areas where the lanyard was utilized in contact with the misuse of a GRIGRI assisted belay device." *Id.* at 17, ¶ 61(e). The consultant also concluded that the lanyards did not meet either the tensile strength requirements of 29 C.F.R. 1910.140(c)(4), or the requirements for rope lanyards under ANSI/PRCA American National

5

Safety Standards. The consultant further found that Vail employees had been instructed to tie knots in the lanyards, thereby lowering the lanyard's tensile strength.

Plaintiff's briefing asserts that these equipment shortcomings, including the foreseeable tying of a knot in the lanyard and resulting reduction in tensile strength, may be attributed to Petzl's negligence. The Second Amended Complaint asserts two causes of actions against Petzl: a negligence claim in Count V, and a loss of companionship claim in Count VII. Petzl now moves to dismiss those causes of action, arguing failure to state a claim upon which relief may be granted.

## Discussion

Petzl moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Reviewing a motion to dismiss under Rule 12(b)(6), the Court liberally construes the claims, accepts the factual allegations in the Second Amended Complaint as true, and draws all reasonable inferences in the

non-movant's favor. *See La Liberte v. Reid*, 966 F.3d 79, 85 (2d Cir. 2020). However, the Court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

Plaintiff's primary substantive claim is her negligence cause of action. Because federal jurisdiction in this case is based on diversity of citizenship, the Court follows Vermont's substantive law. *See Marina Mgmt. Corp. v. Brewer*, 572 F.2d 43, 45 (2d Cir. 1978) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). In Vermont, a claim for "common law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." *Stopford v. Milton Town Sch. Dist.*, 2018 VT 120, ¶ 12 (quotation and alteration omitted). Here, there is no dispute that Petzl had a duty to users of its products, that Lewis suffered an actual injury, and that certain equipment, including the zip line lanyards, is alleged to have been causally linked to that injury. The pivotal question is

7

therefore whether Petzl is liable for a breach of its duty of care.

Plaintiff claims negligent design, manufacture, and sale of the products being used by Lewis at the time of his accident. Plaintiff also asserts a breach of Petzl's duty to warn.  ECF No. 67 at 29, ¶ 116 ("Petzl America, Inc. negligently failed to warn users of these components that they could fail under reasonably foreseeable conditions like those at issue in this case."). "In Vermont, a manufacturer's duty to warn of known product defects 'arises when the product manufactured is dangerous to an extent beyond that which would be contemplated by the ordinary purchaser, *i.e.*, a consumer possessing the ordinary and common knowledge of the community as to the product's characteristics.'" *Ostrowski v. Hydra-Tool Corp.*, 144 Vt. 305, 308 (1984) (quoting *Menard v. Newhall*, 135 Vt. 53, 55 (1977)). The Vermont Supreme Court has eliminated the privity requirement in negligence and has extended the duty to warn "to employees of purchasers as well." *Id.* at 308-09 (citations omitted).

Plaintiff's negligent manufacture and design claims center on lanyard tensile strength. The Second Amended Complaint cites the VOSHA consultant's finding that Lewis's lanyards did not meet national safety standards. It is not clear from the pleadings whether Plaintiff is claiming that the lanyards were

8

insufficient at the time of manufacture, or whether they were rendered insufficient by time, intensity, and/or method of use. The pleadings arguably support the latter reading, and that Petzl should have foreseen that certain uses would result in lowered tensile strength.

For example, Plaintiff argues that Petzl was aware that "users of the lanyards would tie a knot in them near the GriGri in order to prevent slippage . . . thereby weakening the lanyard further." ECF No. 83 at 7. The Second Amended Complaint also alleges that according to the safety alert issued by Terra-Nova, a Petzl-authorized dealer, the lanyards could be subject to "repeated wear in specific locations" and were ultimately found to show "excessive aging and glazing including heavier wear areas" where the lanyard was "in contact with the misuse of a GRIGRI assisted belay devise." ECF No. 67 at 12, ¶ 42; 17, ¶ 61(e). Plaintiff cites these allegations as supporting her claim that Petzl was aware of how the lanyards were being misused, particularly in connection with the GriGri, and "failed to design a safer product or warn foreseeable users that the lanyards could burst under reasonably foreseeable types of pressure." ECF No. 83 at 7-8.

Petzl argues that the Second Amended Complaint supports only plausible allegations of equipment misuse – not faulty design, manufacture, marketing or sale. Plaintiff's negligence

claim, however, includes an allegation that such misuse was foreseeable and should have been accounted for in the course of design and manufacture. Petzl also submits that any claim of liability, presumably including foreseeability, was addressed in its standard inspection form, which called for "systematic rejection" of a component after six months of intensive use or 12 months of normal use. ECF No. 67 at 18, ¶ 62(d). Giving the Second Amended Complaint the required liberal reading, and making all reasonable inferences in Plaintiff's favor, Petzl's inspection guidelines do not directly counter a plausible claim of faulty design or manufacture.

Petzl further contends that the factual claims in the Second Amended Complaint are sufficient to establish its intentional misuse defense. Specifically, Petzl argues that allegations about Vail's misconduct and disregard for safety warnings constitute admissions, and that such admissions undermine any negligence or product liability claim. "[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(c)(1)). Affirmative defenses, however, "often require[ ] consideration of facts outside of the complaint and thus [are] inappropriate to resolve

10

on a motion to dismiss." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

In this case, the Second Amended Complaint clearly alleges that certain co-Defendants knowingly disregarded safety warnings, failed to conduct proper inspections, and allowed the misuse of equipment that was manufactured, designed, and sold by Petzl. Nonetheless, Plaintiff may also be able to establish that some of that conduct was foreseeable, and that Petzl's equipment was not fit for such foreseeable uses.[1] The Second Amended Complaint plausibly alleges both inadequate tensile strength and a failure to account for foreseeable misuse, and Plaintiff may further develop her factual support for those theories. Similarly, Plaintiff has plausibly alleged that Petzl's product was more dangerous than the ordinary user would have contemplated, and that additional warnings were warranted. *Ostrowski*, 144 Vt. at 308. Accordingly, the Court finds that Plaintiff has properly stated claims of negligence and loss of companionship, and Petzl's motion to dismiss is denied.

---

[1] Petzl's reply memorandum cites the deposition of the VOSHA consultant, in which he reportedly testified that he had no "issue with the Petzl components. It is – how they were being utilized is outside your specifications. That is the only thing I had with that." ECF No. 85 at 9. The consultant's deposition testimony is not set forth within the four corners of the Second Amended Complaint, is not referenced or incorporated into that pleading, and is therefore beyond the scope of the Court's consideration under Rule 12(b)(6). *See McCarthy*, 482 F.3d at 191.

## Conclusion

For the reasons set forth above, Petzl's motion to dismiss (ECF No. 71) is denied.

DATED at Burlington, in the District of Vermont, this 22nd day of August 2025.

/s/ William K. Sessions III
Hon. William K. Sessions III
District Court Judge